## M. MAHORNER, ASSIGNEE, *v.* M. FORCHEIMER & CO. ET AL.

1. ASSIGNMENT FOR CREDITORS. *General assignment. Reservation of exempt property. Exempt personal property. Retention of money by debtor. Excessive sum retained. Selection by debtor. Code* 1892, § 1971.

    Where the assignor in a general assignment for the benefit of creditors, embracing all of the assignor's property save his legal exemptions, retained the proceeds of goods sold out of his store, on the day of and the day immediately preceding that of the assignment, to the amount of three hundred dollars, and there is no showing of any kind that the money so retained was ever selected by him as the exemption of personal property, not to exceed in value two hundred and fifty dollars, allowed to certain debtors, on their selection of the same, by § 1971, code of 1892, and, on the contrary thereof, has, in his answer, under oath, denied that he retained the same, or any part thereof, and averred that all the money so collected by him was applied to the payment of his debts, such retention was fraudulent, and renders the assignment void.

2. SAME. *Administration in chancery court. Distribution. Priorities. Code* 1892, §§ 117, 121, 122.

    Where the assignee in a general assignment, with preferences, has proceeded by petition in the chancery court for the administration of the same, under the provisions of chapter 8, code of 1892, and some of the creditors have filed a cross petition thereunder, and shown that the assignment is fraudulent and void, they are entitled to priority of payment out of the proceeds of the assigned property; but the residue of such proceeds should be ratably distributed among all the other creditors, including those preferred, for, the assignment being wholly annulled, creditors who have not attacked the assignment itself, but merely sought to defeat the preferences contained in it, are not entitled to any priority of payment over the preferred creditors.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

The opinion states the case. The section of the code of 1892, under which the $300 is claimed to have been personal property

exempt from seizure or sale under execution or attachment, is as follows:

"1971. *Exemptions in cities, towns and villages.*—Every citizen of this state, male or female, being a householder, and having a family residing in any city, town or village, shall be entitled to hold exempt from seizure or sale under execution or attachment, the land and buildings owned and occupied as a residence by such person, not to exceed in value, save as hereinafter provided, two thousand dollars, and personal property, to be selected by him, not to exceed two hundred and fifty dollars, or the articles specified as exempt to the head of a family."

*J. E. Rives,* for the appellant.

The money retained by the assignor was less than $250, and he was entitled to retain the same as exempt under § 1971, code of 1892.

Unlike the case of *Montgomery* v. *Goodbar*, 69 Miss., 333, the assignment under review contained a reservation of the debtor's exempt property. It should be presumed that he did select the money as exempt until the contrary is shown. *Richardson* v. *Marqueze*, 59 Miss., 80. The point presented has been adjudicated by this court in a case where two creditors were each claiming a better right to the barrel of whisky in controversy, the court holding that the whisky was exempt. *Bernheim* v. *Andrews*, 65 Miss., 28.

The court below erred in ignoring the claim of Foote, which was a lien by judgment, although he expressed a willingness to abide by the assignment in case it should be held valid, thereby releasing his security in favor of the preferred creditors, among whom he was named. It also erred in requiring the assignee to pay over the money in his hands to the cross petitioners before the prior liens were satisfied, and in refusing to grant a personal decree in favor of those preferred creditors, who, in their petition, asked for the same. All of the creditors were

entitled to personal decrees, if asked for under § 122, code of 1892.

*Critz & Beckett*, on the same side.

The decree sets aside the assignment *in toto* as to the creditors who attacked it on the ground of fraud, and awards them decrees operating as liens upon all the assets, which they will very nearly, if not quite, consume. These creditors constitute the first class.

The second class are those who only assailed the preferences, as to whom the decree cancels the preferences, and leaves the assignment in force, with this modification, but gives them no relief whatever. They go out empty handed, and with no adjudication of their claims.

As to the third class, the creditors preferred in the assignment, the instrument is sustained *in toto*, but the decree gives them no relief whatever—not even a judgment against the assignor. H. W. Foote is excluded even from this class. He is a nondescript, with no *locus standi* in the case.

But the second and third classes are wholly unprotected. It seems a mockery to sustain the assignment as to these, after it has been annulled, and the estate consumed in the interest of the first class. An assignment is not simply paper. The paper is but the evidence of the assignment. The substantive thing in the assignment is a transfer of goods or property or claims and money, and to sustain an assignment is to approve such transfer. But here the transfer of the substance is set aside, and the substance disposed of; then the empty title is affirmed as to the second and third classes, without any substantial relief. How is it possible to enforce the decree as to the second and third classes? As to these, how and when, and by whom is the distribution to be made, and in what order shall they be paid? As to the second class, all preferences are set aside, and there must be a *pro rata* distribution. As to the third class, all preferences are sustained. How can the preferences be overruled and sustained at the same time?

It is true that, under one view of the case, the preferred claims might be first paid off in their order, in full, and the balance be then divided among the creditors of the second class, but this would be enforcing the preference clause as to the second class, and in violation of the express provisions of the decree. Or all claims of the second class might be paid in full, and the third class be then paid according to their preferences in the deed, but this would not only violate the decree, but would be wholly unwarranted and unjust. In no view of the case would the second class have a right to priority over the third class, either under the assignment or under the decree.

There was no reason why the claims of the second and third classes should not be adjudicated. The chancellor seems to have been of the opinion that the cancellation of the deed as to the attacking creditors, the first class, removed the receiver, and ended all jurisdiction as to the second and third classes. Of course, this could not be correct. The refusal of the court to cancel the deed as to the second and third classes, by the express terms of the statute, leaves the receiver in office, with full jurisdiction in the court to adjudicate the whole matter, and the court cannot escape this jurisdiction until all these claims are adjudicated. Having once taken jurisdiction, the chancery court must do full justice before it stops. The court below expressly denied relief to all the creditors except the first class. It is especially important that the rights of all the creditors be protected in this proceeding, because this decree provides for a disposition of all the property, and, of course, the interest of all parties must be protected in this disposition of the effects of the assignor. Section 122, code 1892, provides for cross petitions against the assignor, under which judgments may be obtained against him upon each claim. Without this cross petition, nobody is entitled to a personal judgment against the debtor, but this provision has nothing to do with the creditors' rights to the property assigned. Section 123, code 1892, provides for a contest between the creditors thus: "And the court

shall, on proper motion, cause all proper issues to be made up to test the validity of claims.''

If the claims enumerated in the schedule are not contested, they are allowed as a matter of course.   The assignment admits the validity of each claim, and provides for its payment, and the court has no right to defeat this provision as to any claim not objected to.   As to most of the claims in question, there is no objection.   As to such as were contested, the court should have made up issues and tested the validity of the same.

It appears that there was some money in the safe and cash drawers that was not turned over to the assignee.   The presumption is that the assignor retained that money, but it evidently did not exceed $250, and, hence, was exempt under the statute, the assignor being a householder, and having a family residing in the town of Macon.   *Bernheim* v. *Andrews*, 65 Miss., 28.   In the case at bar the court below said that the exemption was a personal privilege of the assignor, and that the question could not be raised by the assignee or the creditors of the assignor.   In the case above cited the exemption was enforced by creditors.   There is no such thing as a fraudulent assignment of exempt property; as to that he is without creditors.   *Smith* v. *Allen*, 39 Miss., 469; *Catchings* v. *Manlove*, *Ib.*, 655; *Edmonson* v. *Meacham*, 50 *Ib.*, 38, 39.

In the case of *Goodbar* v. *Montgomery*, 69 Miss., 335, the assignment contained no reservation of exempt property.

*A. C. Bogle*, for the appellees.

On the day of the assignment, and the day immediately preceding it, the assignor received from sales of goods out of his store fully $300.   No money was turned over to the assignor, and no explanation is given as to what became of the money so received.   A reasonable presumption that the assignor appropriated it arises.   Where a negative fact is to be shown, it devolves upon the party having peculiar knowledge of the fact to establish it.   The money was traced to the assignor's hands,

and the burden of proving some legitimate use of it rested upon him. Rice on Ev., pp. 112, 117; 7 Am. & Eng. Enc. L., p. 95; *Parkhurst* v. *McGraw*, 24 Miss., 134; *Clements* v. *Moore*, 6 Wall., 315. No one can read the record in this cause and not come to the conclusion that the assignor got this money. He failed to turn it over to his assignee, or to apply it to the payment of his debts; and, under the decisions of this court, his assignment must be treated as fraudulent and void.

WOODS, J., delivered the opinion of the court.

It appears quite satisfactorily that Pruitt, the assignor, retained in his hands, and did not turn over to his assignee, the cash proceeds of sales from his stock of goods made on the day of the assignment and the day immediately preceding. These sales amounted, after deducting cash paid out by the store on those days, to about three hundred dollars.

It is contended by counsel for the assignee, however, that, as the assignor expressly reserved his exempt property by the terms of the assignment itself, the deed of assignment is not rendered void by this retention of the cash proceeds of those two sales, because, as counsel argue, it does not clearly appear that the total amount of money so retained actually exceeded two hundred and fifty dollars, and because the assignor was entitled to withhold money, if he so chose, to an amount not exceeding two hundred and fifty dollars. There are two obvious answers to this contention: (1) No one can read this voluminous record and fail of reasonable conviction that more than two hundred and fifty dollars was retained by the assignor. (2) Admitting that the amount was two hundred and fifty dollars, or less, still the assignor wrongfully withheld the same from his assignee, and this on two grounds: First, the sworn answer of the assignor to the cross petitions of the creditors assailing the assignment as fraudulent, by reason, in part, of the retention of money derived from sales of goods from the store, expressly states "that all the money collected by him

from the sales of goods and otherwise was applied by him to the payment of his debts. He denies that he kept the same in his pessession, and he denies that he still has the same, or any part thereof, in his possession.'' Here is a distinct averment that he kept no money derived from sales of goods, but that he applied the same to the payment of his debts. But we have seen that he did retain about three hundred dollars, and there is an absence of all evidence showing the payment of any debt with the money thus withheld from the assignee. But, secondly, there is no hint anywhere in the transcript before us that the assignor ever selected and retained this money as exempt, and selection was necessary to retention.

On this point, counsel for appellant cites the opinion of this court in *Bernheim* v. *Andrews*, 65 Miss., 28, as holding that, in a suit to which a debtor is not a party, one of his creditors, in a controversy with another creditor, may raise the point that property seized was the exempt property of the common debtor. Because of an insufficient statement of the facts contained in the report of that case, the counsel have been misled in their construction of the language employed in that opinion. Besides the very brief and imperfect statement of facts contained in the reported case, the original record therein shows perfectly that an elaborate motion for a continuance was made in the circuit court by counsel for Bernheim, which showed, among other things, that Bernheim could not safely go to trial because of the unexpected absence of Howell, the common debtor, by whom it was expected to prove that the barrel of whisky seized '' was and is Howell's exempt property, and that the debt for which it was condemned is the purchase money debt therefor.'' That Bernheim was the seller of the whisky to Howell, and had a right to resort to the property sold for payment of the purchase price, even though claimed and held as exempt property, so long as it remained in the hands of the buyer, was the contention of Bernheim's counsel, and this he professed to be able to support by the evidence of Howell himself, if a continuance were

granted. The circuit court overruled the application for the continuance "upon the ground alone that the evidence . . . would be inadmissible in this case if the witnesses were here to testify." On Bernheim's appeal, this court reversed the action of the circuit court. In view of these added facts, the language of the court is conclusive against the contention that anyone other than the exemptionist may make selection of exempt property, for says that opinion: "It is for the exemptionist to select for himself, according to his judgment, taste or fancy."

In the case at bar there is no evidence showing, or tending to show, that Pruitt, the assignor, selected for himself the money retained as exempt property. The successful assault of the attacking creditors at this point renders void the deed of assignment, and entitles these creditors to the priorities recognized by the decree of the court below. To this extent, we altogether concur in finding of fact and conclusions of law reached on hearing below, but we cannot concur in the court's action in dividing the creditors into three classes—(1) those who attacked the assignment as fraudulent and void; (2) those who did not assail the assignment as fraudulent and void, but sought only to set aside the preferences therein; and (3) those creditors whose debts were preferred—and then in decreeing priority and distribution in that order.

Chapter 8, code 1892, provides a scheme in itself for the equitable administration of estates assigned generally for the benefit of creditors. By § 117 of that chapter, provision is made for this administration in one proceeding, to which the assignee, the assignor and all the creditors are to be made parties. By § 121 we find that "any creditor may file in said cause a cross petition against the receiver, and he may make the assignor or other persons, whether parties to the suit before that time or not, defendants thereto, and show to the court that the assignment is fraudulent, or ought not, for any other reasons, to be enforced, and property other than that in the trustee's or assignee's hands may be shown to be liable for the

debts of the assignor.'' In this section we find, further, that
''the creditor filing a cross petition, if he succeed in estab-
lishing that the assignment ought not to be enforced, shall have
priority over all other creditors in the distribution of the pro-
ceeds of the property in the assignee's hands, and a lien, from
the filing of his cross petition, on other property he may seek
to have subjected to his debt,'' etc. By § 122 provision is
made for any creditor, by cross petition, to demand a personal
decree against the assignor for the amount of his debt, but de-
claring that the priority of such personal decrees shall not affect
the distribution of the assigned effects, or proceeds thereof.
By § 123 it is made '' the duty of all creditors to establish their
claims to the satisfaction of the court; and any creditor may
oppose and controvert the demand or claim, in whole or in part,
of any other person, and the court shall, on motion, cause all
proper issues to be made up to test the validity of claims.''

We have thus a scheme complete within itself, by which, in
one proceeding, assignee, assignor and all creditors are required
to appear as parties, and present and make good their demands.
Distinct provision is made for proceedings by creditors to annul
the assignment for fraud, and declaring the result to the attack-
ing creditors which must follow a successful attack, but no
priorities are created for any creditors other than those by
whose intervention the assignment has been decreed to be void.
The deed of assignment shown to be fraudulent falls, its prefer-
ences fall, its provisions all fall; but the assigned estate itself
remains in the hands of the court for distribution in accordance
with the principles of equitable administration. The only pri-
orities recognized are those of the successful creditors in the
attack upon the fraudulent assignment. All other creditors,
after the fall of the assignment, stand upon equal footing.
The preferred creditors, in the general attack upon the fraudu-
lent assignment, even though no specific attack has been made
upon the preferences, are neither the better nor the worse off
because of the total destruction of the deed of assignment. In

no event can we find any ground in this new scheme for classing them as other than creditors not entitled to priorities, and, to us, it seems equally clear that they are not to be postponed to other creditors who have not attacked the assignment itself. If the preferred creditors can be postponed to creditors who have not attacked the assignment itself, but only the preferences created by it, we should be bound to hold the converse of this proposition, and declare priorities to preferred creditors over those who had assailed preferences only, where this limited assault was unsuccessful, but the gross inequitableness of this latter proposition is perceptible on the slightest reflection. To illustrate: Suppose A makes a general assignment of an estate worth $10,000, with preference for B's debt, which amounts to $10,000, while all his other debts unpreferred amount also to $10,000. C alone of all A's creditors, having a debt of $500, files his cross petition assailing the assignment as fraudulent, and succeeds in having it declared void, whereby he secures his §500, and leaving $9,500 untouched in the hands of the court's assignee-receiver. Could B be then heard to say that the assignment had not been completely set aside and annulled, but only vacated *sub modo*, and, no attack having been made specifically upon the preferences, the assignment must be upheld as to his debt, C having been paid off, and he permitted to walk out of court with the entire remaining $9,500, whilst all other creditors, with the debts amounting to $10,000, shall go out empty handed?

But our statute leaves no room for doubtful disputation. With the fall of the fraudulent assignment preferences fall, and the entire estate is to be equitably administered for the benefit of creditors, the only priority recognized being that awarded by the law to those by whose instrumentality the assignment was overthrown.

We affirm the decree appealed from in so far as it declares the assignment void, and in so far as it maintains the priorities of the creditors of the assignor who attacked the conveyance as

fraudulent. We reverse in so far as the decree establishes any priorities between all other creditors, and in so far as it denied any relief to H. W. Foote.

So far as we can now see, there was no controversy over the note of November 20, 1893, for $375, which appears in the now vacated assignment as the first preferred debt. As to the other notes given Foote by the assignor, on November 29, 1893, and due respectively in thirty, sixty, ninety days and four months, given in extension of Pruitt's note to Mrs. Hambrick, as the assignment describes them, there is obscurity. As to Foote's claims generally, we content ourselves with saying that certainly something is due this creditor, and, on clearer proof in the court below, after our remanding the case, this creditor should be allowed to show exactly what is due him, and for the amount so found to be due, he is entitled to share with all others not entitled to priorities, equally in the distribution of the estate being administered.

*Affirmed in part and reversed in part.*